# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| IN RE: Family Dollar Stores, Inc., Pest Infestation Litigation ) ) ) | |
| ) | 2:22-md-03032-SHL-tmp |
| This Document Relates To: ) | (MDL Docket No. 3032) |
| ALL CASES ) | |

## ORDER GRANTING THE STATE OF ARKANSAS'S MOTION TO INTERVENE AND SETTING BRIEFING DEADLINE

Plaintiffs Dondrea Brown, Muriel Vanessa Brown, Vinnie L. Smith, Julian A. Graves, Reginald and Sonya Fields, Taylor Lorimer, Martha "Keisha" Lacy, Sheena Bibbs, Jerome Whitney, Tina Bishop, Sonya Mull, and Christine Robinson (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, brought this consolidated class action, against Defendants Family Dollar Stores of Tennessee, LLC; Family Dollar Stores of Arkansas, LLC; Family Dollar Stores of Alabama, LLC; Family Dollar Stores of Louisiana, LLC; Family Dollar Stores of Mississippi, LLC; Family Dollar Stores of Missouri, LLC; Family Dollar Services, LLC; Family Dollar, Inc.; Family Dollar Stores, Inc.; Dollar Tree, Inc.; and Dollar Tree Stores, Inc. (collectively "Family Dollar"). (ECF No. 54.) The amended complaint alleges that Family Dollar deceptively, negligently, recklessly, and/or intentionally sold products that were contaminated by a rodent infestation in stores throughout Mississippi, Arkansas, Louisiana, Alabama, Missouri, and Tennessee. (Id. at PageID 347.) The State of Arkansas moves to intervene, asserting that it is the only entity that can protect the interests of all Arkansas consumers under the Arkansas Deceptive Trade Practices Act ("ADTPA"). (ECF No. 167 at PageID 3248.)

Before the Court are Arkansas's Motion to Intervene, (ECF No. 167), Plaintiffs' Response, (ECF No. 172), Family Dollar's Response, (ECF No. 173), and Arkansas's Reply, (ECF No. 178). For the following reasons, the Court **GRANTS** Arkansas's Motion to Intervene.

## BACKGROUND

Family Dollar is a value chain store that sells groceries and household goods at discounted prices. (ECF No. 54 at PageID 347–48.) Family Dollar owned and operated more than 8,000 stores and eleven distribution centers, including the Family Dollar Distribution Center in West Memphis, Arkansas ("Distribution Center 202"). (ECF No. 167-1 at PageID 3256, 3331.) Distribution Center 202 distributed products to Family Dollar stores in eleven states, six of which had stores that were affected by the incidents that led to this litigation. (Id.) Eighty-five of these stores are located in Arkansas. (Id.)

In March 2021, the Arkansas Department of Health ("ADH") inspected Distribution Center 202 and reported seeing "significant rodent activity" in areas where human and pet food were stored. (Id.) The ADH notified the U.S. Food and Drug Administration ("FDA") in October of 2021, which prompted an FDA investigation. (Id. at PageID 3257.) On February 11, 2022, the FDA released a report that detailed a rodent infestation that compromised products stored inside Distribution Center 202. (ECF No. 54 at PageID 348.) On February 18, 2022, the FDA issued a Safety Alert that directed consumers who had shopped in affected stores to discard certain products that had potentially been contaminated by rodents. (ECF No. 167-1 at PageID 3257.) The same day, Family Dollar temporarily closed 404 stores and issued a voluntary recall of the FDA-regulated products sold in the affected stores. (Id. at PageID 3258.)

After learning of the rodent infestation, the Arkansas Attorney General ("AG") began an investigation for potential violations of Arkansas law, including the ADTPA. (Id. at PageID 3259.) On April 28, 2022, the AG filed a lawsuit against Family Dollar in Arkansas state court ("Arkansas Case") asserting claims under the ADTPA and several common law claims. (Id.); State of Ark. v. Family Dollar Stores, Inc., Case No. 60CV-22-2725, Pulaski Cty. Circ. Ct. (Apr. 28, 2022). Through its lawsuit, Arkansas seeks actual and punitive damages, disgorgement, restitution, civil penalties, and injunctive relief against Family Dollar. (Id.)

By June 2, 2022, thirteen lawsuits had been filed against defendants in seven different federal jurisdictions. (Id. at PageID 3260.) On that date, The United States Judicial Panel on Multidistrict Litigation ordered these actions to be centralized in the Western District of Tennessee, resulting in the instant Multidistrict Litigation ("the MDL"). (Id.) The Arkansas case remained in state court, and thus was not transferred to the MDL. (Id.)

As early as June 2022, counsel for Plaintiffs and the AG began discussing the coordination of discovery. (Id.) In October 2022, Plaintiffs and the AG entered a Memorandum of Understanding ("MOU"), which provided that both parties "agree to inform each other in advance of any negotiations related to settlement and shall provide each other the opportunity to participate in such negotiations."[1] (Id. at PageID 3261.) Under the terms of the MOU, any settlement proceeds constituting restitution to consumers were to be divided with 80% going to the MDL Plaintiffs and 20% going to Arkansas. (Id.) A month later, the AG entered a Joint Prosecution Agreement ("JPA") with counsel for Plaintiffs, which provided that counsel would cooperate in the discovery process, the hiring of experts, and the sharing of expert testimony.

---

[1] According to Plaintiffs, the first page of the MOU agreement states that the obligations are "subject to the completion of formal documents that will effectuate this agreement." (ECF No. 172 at PageID 3383.) No such documents were ever completed. (Id.)

(Id. at PageID 3261.)

On April 18, 2023, the MDL parties engaged in a second mediation, the first many months earlier having been unsuccessful. (ECF No. 173 at PageID 3421.) Plaintiffs requested a joint mediation with Arkansas, but Family Dollar rejected the request. (Id.) Notwithstanding Family Dollar's position on joint mediation, a representative from the AG's office appeared at the mediation without Family Dollar or the mediator's knowledge. (Id.) When this representative's presence was discovered, they were asked to move to another conference room. (Id.)

Despite this hiccup, the parties made significant progress at the mediation. (Id.) The mediator prepared a proposal on April 20, 2023, and asked the parties to approve or reject the proposal by April 28. (Id.) Plaintiffs' counsel requested two extensions of that deadline to discuss the proposed settlement terms with the Arkansas AG. (Id. at PageID 3421–22.) On May 3, 2023, the AG was provided a copy of the mediator's proposal, which included the material terms of the settlement: an uncapped, "claims made" settlement providing $25.00 Family Dollar gift cards to all claimants who could attest that they shopped at a Family Dollar store serviced by Distribution Center 202 between January 1, 2020 and February 18, 2022. (Id. at PageID 3422.) On May 5, 2023, the parties accepted the mediator's proposal and began to prepare a long-form settlement agreement. (Id.) On May 8, 2023, the parties shared a draft agreement with the AG, and, on May 30, 2023, they provided him with an updated draft. (Id.)

On June 7, 2023, Arkansas requested that the parties include a "carve out" from the release that made it clear that the MDL settlement would not resolve the Arkansas Case. (Id.) A few days later, Arkansas requested that the parties remove a provision that would reserve Family Dollar's right to object to any attempted double-recovery. (Id.) Family Dollar agreed to the

4

carve out but would not delete the reservation of rights.  (Id.)  On June 19, 2023, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Consolidated Class Action Settlement.  (ECF No. 155.)  The Settlement Agreement that accompanies that Motion includes both the carve out and Family Dollar's reservation of rights, and states, in relevant part:

> WHEREAS, this Settlement expressly excludes and does not release any claims made by the Arkansas Attorney General in State of Arkansas, ex rel. Leslie Rutledge, Attorney General v. Family Dollar Stores, Inc.; Dollar Tree, Inc.; Family Dollar Services, LLC; and Family Dollar Stores of Arkansas, LLC, Case No. 60CV-22-2725, Circuit Court of Pulaski County, Arkansas, Civil Division.  However, Defendants reserve all rights to raise any and all defenses to the claims raised in that case, including that monetary relief would be inappropriate given the relief provided to consumers through this Settlement.

(ECF No. 156-1 at PageID 3065.)

On July 18, 2023, Arkansas filed the instant Motion to Intervene, arguing that Plaintiffs' class-action ADTPA claims are prohibited by Arkansas law.  (ECF No. 167.)  Arkansas asserts that without the AG's intervention—or the court entirely carving out the ADPTA claims—the claims raised in this litigation cannot be settled by the current parties.  (ECF No. 167-1 at PageID 3255.)  Arkansas seeks intervention of right, or, alternatively, permissive intervention, to more explicitly carve out all claims made under the ADTPA so that the state may continue to prosecute the Arkansas Case.  (ECF No. 178 at PageID 3446.)  The Court held a hearing on the Motion on August 10, 2023.  (ECF No. 179.)

## ANALYSIS

### I. Timeliness of the Motion to Intervene

Timeliness is a threshold question for both motions seeking intervention of right or permissive intervention.  Stupak-Thrall v. Glickman, 226 F.3d 467, 472 (6th Cir. 2000) (citing NAACP v. New York, 413 U.S. 345, 365–66 (1973)).  There are five factors to consider when analyzing the timeliness of a motion to intervene:

5

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

Id. at 473. "No one factor is dispositive, but rather 'the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" Blount-Hill v Zelman, 636 F.3d 278, 284 (6th Cir. 2011) (quoting Glickman, 226 F.3d at 472–73). The question of whether a motion to intervene is timely is "within the sound discretion of the trial court." Bradly v. Milliken, 828 F.2d 1186, 1191 (6th Cir. 1987) (citing NAACP, 413 U.S. at 365–66).

Although Arkansas did not address the five timeliness factors in its brief, the AG asserts that the Motion is timely because the state sought to intervene as soon as it became aware that its interests were at risk. (ECF No. 167-1 at PageID 3274.) Plaintiffs argue that all five factors weigh against the timeliness of Arkansas's Motion. (ECF No. 172 at PageID 3381.) However, at the hearing, Plaintiffs stated: "We, as the Plaintiffs still do believe that intervention should be denied as being untimely for the reasons we've talked about. But the substantive claims that have been brought by the Arkansas AG under that intervention we think the Court should address in the preliminary approval order, regardless of how the Court rules on it. . ." (ECF No. 180 at PageID 3467.) Family Dollar describes Plaintiffs' timeliness challenge as "valid," but does not object to intervention, "encourage[ing] the Court to resolve the substance of the Attorney General's objections on the merits before any ruling on the Motion for Preliminary Approval." (ECF No. 173 at PageID 3424.)

6

A.      Stage of the Proceeding

When considering the first factor, the stage of the proceeding, courts examine the substantive progress that has occurred in litigation, rather than the timing of the motion to intervene. United States v. Tennessee, 260 F.3d 587, 592 (6th Cir. 2001). "If the litigation has 'made extensive progress in the district court' . . . then this factor weighs against intervention." Id. (quoting Glickman, 226 F.3d at 475).

The parties in this case have conducted extensive discovery, taken nine depositions, exchanged designations of ten experts, attended several rounds of mediation with two different mediators, and filed a proposed settlement agreement. (ECF No. 172 at PageID 3381.) Considering the extensive progress the parties have made here, the first factor weighs against granting intervention.

B.      The Purpose of Intervention

The second timeliness factor is the purpose for which intervention is sought. Arkansas's stated purpose is to protect the state's interest in administering and enforcing the ADTPA. (ECF No. 167-1 at PageID 3274.) Courts have found a state's interest in enforcing its own laws to be a valid purpose when considering the timeliness of intervention. For example, in Eastern Shawnee Tribe of Oklahoma v. Ohio, the court found that the Ohio Attorney General's purpose of challenging settlements that the state claimed violated Ohio law was valid and weighed in favor of a finding of timeliness. No. 3:05CV7267, 2006 WL 2711563, at *3 (N.D. Ohio, Sept. 19, 2006).

Plaintiffs argue that the settlement agreement explicitly disavows any intent to release claims asserted by the AG, which defeats Arkansas's purpose for intervention. (ECF No. 172 at PageID 3381.) Whether this contention is correct is irrelevant; a motion for intervention can be

7

granted regardless of the possibility of success of the applicant's purpose for intervention. Eastern Shawnee Tribe, 2006 WL 2711563, at *3 (citing Deutsche Fin. Servs. Corp. v. Schwartz Homes, Inc., 187 F.R.D. 542, 546 (N.D. Ohio 1999)). Thus, the second factor weighs in favor of granting intervention. Id.

        C.        Possibility of Intervening Sooner

When considering the third factor, the possibility of intervening sooner, a court must look at the date that a party became aware that its interest would be affected. Id. A court cannot deny a motion to intervene simply because a case is in its "remedial stages." Id. (citing Grubbs v. Norris, 870 F. 2d 343, 345 (6th Cir. 1989)).

As Plaintiffs point out, Arkansas has been aware of the claims made in the MDL for over a year. Indeed, counsel for Plaintiffs and the AG began coordinating discovery back in June of 2022. (ECF No. 167-1 at PageID 3260.)

The AG, on the other hand, contends that Arkansas had an agreement with Plaintiffs that the ADTPA claims would be carved out more completely and was blindsided by the proposed settlement. While there is no evidence of this agreement in the JPA or the MOU, (ECF No. 180 at PageID 3453–54), the MOU does state that "All settlement proceeds representing restitution to consumers shall be divided with 80% going to MDL Plaintiffs and 20% going to the State. Each Parties' share will be deposited and paid in cash directly to said Party and each Party will bear its own litigation expenses and costs." (ECF No. 167-4 at PageID 3372.) Arkansas claims that it was unaware until viewing the Unopposed Motion for Preliminary Approval of Consolidated Class Action Settlement filed on June 19, 2023, that the manner of restitution allocation agreed to by the parties was inconsistent with the MOU and contrary to Arkansas law. (ECF No. 178 at PageID 3443.) Arkansas moved to intervene on July 18, 2023, a relatively short time after they

8

became aware of the proposed settlement.  (Id.)  Although the Court is skeptical that Arkansas was unaware that their rights were at risk until the end of June, giving the state the benefit of the doubt, the third factor weighs in favor of granting intervention.

### D.     Prejudice to Original Parties

The fourth factor is the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case.  Arkansas filed this Motion on the eve of settlement.  The state's failure to intervene earlier causes prejudice to the original parties because its intervention may disturb the finality of the settlement and prolong the litigation.  Eastern Shawnee Tribe, WL 2711563, at *3.  However, as stated above, it is possible that Arkansas was unaware that their interest was threatened until it viewed the proposed settlement agreement.  The Court, therefore, reluctantly finds that this factor weighs in favor of intervention.

### E.     Unusual Circumstances

Plaintiffs argue that this Motion was filed under unusual circumstances because Arkansas waited until any threat to the state's interest in administering and enforcing the ADTPA had been eliminated by specific language in the proposed settlement agreement.  (ECF No. 172 at PageID 3384.)  This argument was already considered under the second factor: the purpose of intervention.

Although the timeliness of the Motion is a close question, out of an abundance of caution, the court finds that the Motion is timely and turns to the merits.

## II.     Intervention of Right

Under Federal Rule of Civil Procedure 24(a)(2), a court must permit a party to intervene if that party "claims an interest relating . . . to the transaction that is the subject of the action, and

9

is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." Id.  This rule requires proposed intervenors to show that: (1) their motion for intervention was timely filed, (2) they possess a substantial legal interest in the case, (3) their ability to protect their interests will be impaired without intervention and (4) the existing parties will not adequately represent their interests.  Reliastar Life Ins. Co. v. MKP Inv., 565 F. App'x 369, 371 (6th Cir. 2014) (internal quotations omitted).  Proposed intervenors must prove all four elements as "[t]he failure to meet one of the criteria will require that the motion to intervene be denied."  Grubbs v. Norris, 870 F. 2d 343, 345 (6th Cir. 1989).

As stated above, the Motion is timely.  Plaintiffs do not challenge Arkansas's contention that the existing parties will not adequately represent Arkansas's interests.  Thus, the Court turns to the second and third factors: whether Arkansas has a substantial legal interest in this case and whether that interest will be impaired if it does not intervene.

### A.    Substantial Legal Interest

What constitutes a substantial legal interest is a "rather expansive notion."  Reliastar, 565 F. App'x at 371–72.  However, this notion is not without limits.  Id.  A proposed intervenor must show that it has a "direct and substantial legal interest in the litigation," Grubbs, 870 F.2d at 346, such that it is a "real party in interest in the transaction which is the subject of the proceeding." Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 317 (6th Cir. 2005).  "[T]he possibility of adverse stare decisis effects provides intervenors with sufficient interest to join an action." Jansen v. City of Cincinnati, 904 F.2d 336, 342 (6th Cir. 1990) (citations omitted).

Because the ADTPA prohibits private class actions, Arkansas argues that the state has a substantial legal interest in the ADTPA claims brought by Plaintiffs, and that the approval of the settlement would impinge on Arkansas's authority to bring and release ADTPA claims in its own

courts. (ECF No. 167-1 at PageID 3264.) In the portions of their Response that address intervention, Plaintiffs do not seem to dispute that this interest is substantial, but instead contend that the interest is not at risk based on the language of the settlement agreement, as discussed below.[2] (ECF No. 172 at PageID 3385.) Although not reaching the question of whether the settlement will be approved, the Court agrees that Arkansas's interest in pursuing enforcement of the ADTPA is a substantial legal interest. See Eastern Shawnee Tribe of Oklahoma, 2006 WL 2711563, at *4.

        B.        <u>Ability to Protect Interest Absent Intervention</u>

To satisfy Rule 24(a)'s third factor, the would-be intervenor's "burden is minimal" in that it need only show "that impairment of its substantial legal interest is possible if intervention is denied." RPM Freight Systems, LLC v. Wesco Insurance Co., No. 21-11882, 2022 WL 1102707, at *2 (E.D. Mich. Apr. 13, 2022). Plaintiffs argue that Arkansas's interest in enforcing the ADTPA is not at risk because the Proposed Settlement Agreement explicitly disavows the intent to release claims brought by the AG. (ECF No. 172 at PageID 3385.) Arkansas disagrees, asserting that this nominal carve out is not sufficient to protect Arkansas's interest because Family Dollar reserves its right to "raise any and all defenses to the claims raised in [the Arkansas Case], including that monetary relief would be inappropriate given the relief provided to consumers through this settlement." (ECF No. 167-1 at PageID 3265.) Although Plaintiffs argue that Arkansas's reading of the agreement ignores certain principles of interpretation (ECF No. 172 at PageID 3385), the fact that the agreement is up for interpretation means that Arkansas

---

[2] In the section of the brief that addresses whether the proposed settlement should be accepted by the Court, Plaintiffs argue that state-law prohibitions against class-action liability do not apply in federal diversity cases. (ECF No. 172 at PageID 3392.)

has met the minimal burden of showing a "possible" impairment of its interest.[3]

## CONCLUSION

Although the question of whether this Motion is timely is a close one, the Court nevertheless **GRANTS** Arkansas's Motion to Intervene because it has shown that it has a substantial legal interest in this case that would be impaired if it did not participate. Although Arkansas included much of its opposition to the settlement in the briefing on the Motion to Intervene, it also requested the opportunity to provide additional briefing at the hearing. Therefore, Arkansas's supplemental brief must be filed by September 8, 2023. If Plaintiff and/or Family Dollar would like to respond to the supplement, they must do so by September 15, 2023.

**IT IS SO ORDERED,** the 30th day of August, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Arkansas requests, in the alternative, that the Court allow permissive intervention under Rule 24(b). Because the Court has found that Arkansas can intervene as a matter of right, the Court need not discuss the alternative.